Petition eoh a Re-hearing.
(By Mr. Owsley and Mr. Armstrong.)
December 17.
The counsel for the appellants, believing that, in the opinion rendered in this case, the Court has misconceived the facts, and given to the deed of trust an operation not warranted by its provisions and the testimony contained in the record, feel constrained to again invite the attention of the Court to the case, and ask a re-hearing-
The Court is understood to concede (as the deed of trust unquestionably implies,) that the fifty acres of land should be laid off so as to include all the improvement; and yet they sanction the survey made by Shane, which *501 is admitted to include but part of the improvement; because, they say, that, “ if extended so as to embrace all (of the improvement,) it might be still more disadvantageous to the owner of the residue of the tract, as it would come still nearer severing it into two parts.” The sug-gestión of the Court might, we admit, have been deserving the particular consideration of the grantor, when he was about making the settlement upon his daughter, by the execution of the deed; but it is not perceived how, or upon what principle, the Court ought to be influenced by such a suggestion, in deciding on the rights of the parties growing out of the deed as made. It is not the province of the Court to make a contract for the parties; but to effectuate, by their decree, the contract as made; and if, by the deed, the entire improvement was to be included, how is it possible to conform to the contract as contained in the deed, and not at the same time require the land to be laid off so as to include the entire improvement?
It is true, as suggested by the Court, that to include all of the improvement,by a survey of the fifty acres made to bind on the southern line of the tract of two hundred acres, “ would come still nearer severing that tract in two farts? and we admit that the grantor could not have intended to settle upon his daughter, fifty acres to be surveyed in a form so injurious to the residue of the tract. But it should not be forgotten that, by the deed, the grantor has not fixed the southern line of the tract of two hundred acres as the line to'be adjoined by the fifty acres. According to the deed, the fifty acres was to be laid off on either side or end of the two hundred acres, so as to include the improvement, and so as not materially to injure the form of the remaining one hundred and fifty acres.
If, then, the form of the residue of the tract is entitled to any influence in giving shape to the fifty acres, would it not be more consistent with the obvious import of the deed, to lay off the fifty acres so as to include, not only a part, but the whole of the improvement, and to adjoin some other than the south line of the two hundred acre tract, if, by so doing, the remaining one hundred and *502 fifty acres will be less materially injured? It seems to the counsel that it would, even if the Court had a discretion to order the survey so as to include a part or the whole of the improvement; but it is insisted that, by the terms of the deed, there exists no such discretion, and that the survey should be made to include the whole, and not a part only, of the impi’ovement. And would not the remaining one hundred and fifty acres be less materially injured by a survey of the fifty acres made to include the whole improvement, and to adjoin some end or side, other than the southern line, of the two hundred acre tract? That it would, is evident from an inspection of the plat, marked No. 1, contained in the record, and to which the attention of the Court is respectfully invited. It will be seen that there can be no serious difficulty in so laying off fifty acres as to include the entire improvement, and to adjoin some other end or side of the two hundred acres, and yet not so materially injure the remaining one hundred and fifty acres, as it will be injured by the survey which was made by Shane, and approved and established by the opinion of this Court.
The survey was caused to be made by Shane, before the grantor sold and conveyed the residue of the two hundred acre tract to Guyton; and the Court, in their opinion, remark, that, before his purchase, Guyton knew of the survey which had been so made and acquiesced in by the grantor, and made his purchase without objections to the survey; and from thence infer, that the survey should be protected. We shall not deny but that Guyton knew of the survey which had been made of the fifty acres, before he purchased the residue of the tract, but we respectfully insist that, there is nothing in the record from which it can be reasonably inferred, that the grantor ever acquiesced in the survey as made, or that it was understood or intended by him or Guyton, that the latter purchased and was to have the residue of the tract only, after excluding from the tract the fifty acres as surveyed. On the contrary, we insist that the ' testimony shows satisfactorily, that the grantor was not satisfied with the survey of the fifty acres as made, complained of its not having been surveyed correctly, *503 and sold and conveyed to Guyton whatever might remain of the tract after the fifty acres should be laid off according to the provisions of the deed of trust. The attention of the Court is respectfully invited to the testimony bearing upon this point; and particularly to the deposition of J. D. Allen, on page 34 of the record; the deposition of Abraham Ditto, page 52; the deposition of Henry Guyton, page 50; and the deposition of Philip Dick, page 48. Allen, who was a witness for Shane and wife, says, “that the grantor did not know whether “ the survey was legal or illegal, but considered that it “ was yet to be settled — he did not consider the division “ made by Shane, was final.” Abraham Ditto, a witness, who is the son of the grantor, says, “ my father appeared angry at what Shane had done, and said he, Shane, had no business intermeddling &c.” “ and as long as my father owned the land, I heard him express his dissatisfaction at the way Shane had run off the fifty acres.”
We will not trouble the Court with further extracts from the testimony, as they will doubtless again examine all the depositions. It will not escape the attention of the Court, that, up to the time of his sale to Guyton, the grantor remained in possession of the greater part of the land laid off by Shane; and by his deed-, he conveyed to Guyton, the whole of the tract except the fifty acres which had been conveyed by the deed of trust.
The Court is respectfully requested to review that part of the opinion by which the decree of the Circuit Court, in removing the trustee and appointing another to take charge of the trust property, is approved and sustained. The trustee has committed no act which can be construed into a violation of duty, unless his refusal to co-operate with Shane, in attempting to claim and hold the land, as caused to be surveyed by Shane, is such. But should the Court still entertain the opinion, that the survey, as caused to be made by Shane, ought to be sustained, may not the trustee honestly have entertained a different opinion, and acted in good faith in refusing his aid in the claim set úp by Shane and his wife, to the fifty acres as surveyed? and can it be cor *504 rect, for such a cause, to displace the trustee, and put the property into the' hands of another, not selected by the grantor, and in whom he may have no confidence, and, for ought this Court knows, may not be trust-worthy? There'is other property besides the land contained in the deed of trust, and in relation to which it may be important to have a trustee not in any respect subject to the influence or control of Shane.
Armstrong & Owsley,

for Guyton.

Response to the Petition. .
(By Judge Ewing.)
December 24.
In response to the petition of the appellants, we would suggest, that we have carefully re-examined the testimony in this case, and feel constrained to adhere to our former opinion.
We do not assume the prerogative of making contracts for the parties; but only of construing the contract which they have made, and of carrying into effect their intentions with respect to it.
We still understand • the deed to give to the grantor, or cestui que use, the right to select the end, side or corner of the survey, upon which he will construct the figure of the fifty acres. But when so selected, the figure of the fifty acres is then to be so surveyed as to embrace the improvement, and so as not materially to affect the figure of the residue. The restriction is not upon the right to select the side, end or corner upon which the figure shall be constructed, but upon the form of the figure, or manner in which the survey shall be run and laid off from the end, side or comer so selected. If this be the case, then the grantee or cestui que use, had a right to select the southern boundary of the tract, as the side upon which to construct the survey. And if so, the survey is laid off so as to affect the figure of the residue of the tract as little, perhaps, as could be done. And though the improvement is not entirely embraced, we cannot say that the appellant has been prejudiced by *505 the decree of the Circuit Court, in sustaining the survey as made.
Besides, if we are wrong in the foregoing view — from a careful re-examination of the evidence, (in which we admit there is some contrariety) and especially of the evidence of Cardwell and McGruder, who were present when the deed was made to Guyton, we are confirmed in the conclusion, that, although William Ditto had previously. expressed some dissatisfaction at the manner in which the fifty acres had been laid off, on the day the deed was made he expressed solicitude to protect the interest of Mrs. Shane, made no objection to the survey as made, though it was talked of in his presence, and then and before declared that Mrs. Shane was to have her choice; and while Guyton had gone to the office to get her deed, with a view to enable the draftsman to draw the deed to him, that he sent' for two of his neighbors to see that her interest was protected. And that Guyton then knew that the fifty acres had been laid off, and how it run, and made no objection to it, except that it left out a slip on the southern boundary, which had been acquired from one Payne, after the deed had been made to Mrs. Shane, and which, of course, could not have entered into the intention of the parties as to the boundary when it was made. And after this explanation was made, he made no further objection to the survey as made, but made his contract for the purchase of the residue of the land; and must have done so, with an eye to its true condition and value, excluding the survey of the fifty acres as laid off. It is further pretty evident that, but for the absence of the field notes of the fifty acres, and the intimation of the draftsman that it could not be successfully disturbed, that it would have been excluded, by a definite boundary, from the conveyance to Guyton. We therefore still think, that he ought not now to be permitted to disturb the fifty acres, as then made, or to acquire, by his purchase, a different boundary of land, and that too of superior quality and better form, than that which entered into the views of the parties contracting, or into the consideration of his purchase. And much less has he a right to complain, *506 after thus recognizing the survey as made, and purchasing with a view to it, that a small part of the impi’ovement has not been embraced, when, to extend the survey so as to embrace it, would be evidently disadvantageous to all parties. As made, he recognized it, and purchased the residue, and should abide by it.
The trustee not only refused to co-operate with his ces-tui que trust, in the assertion of her just right, and that which was evidently to her interest, but also took part and combined with her adversary. And in his answer, 'professed a willingness to be displaced, if the complainants desired it, and the Court had the power to remove him. The Circuit Court took him at his word, and did remove him, and appointed another in his stead. Nothing appearing to the contrary, we take it for granted that the person so appointed is trust-worthy. And if he is not, we cannot perceive the ground upon which the former trustee has a right to complain, the ■ cestui que trust being content.
• If the trustee appointed should mismanage the trust fund, his acts are liable to the supervision and control of •the Chancellor.
'The petition for a re-hearing is therefore overruled.